# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF INDIANA
# INDIANAPOLIS DIVISION

| | |
|---|---|
| JESSICA LYNN (SHIPLEY) ARTIS, | ) |
| Plaintiff, | ) |
| vs. | ) Cause No. 1:13-cv-648-WTL-MJD |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security, | ) |
| Defendant. | ) |

## ENTRY ON JUDICIAL REVIEW

Plaintiff Jessica Lynn (Shipley) Artis requests judicial review of the final decision of the Acting Commissioner of the Social Security Administration (the "Commissioner"), denying her application for Disability Insurance Benefits ("DIB") and Supplemental Social Security Income ("SSI") under Titles II and XVI of the Social Security Act (the "Act"). The Court now rules as follows.

## I. PROCEDURAL HISTORY

Artis filed an application for DIB on April 29, 2010, and an application for SSI on April 30, 2010, alleging disability beginning January 15, 2007, due to depression and anxiety. Artis' application was initially denied on June 29, 2010, and again upon reconsideration on August 16, 2010. Thereafter, Artis requested a hearing before an Administrative Law Judge ("ALJ"). The hearing was held on July 18, 2011, before ALJ Blanca B. de la Torre in Indianapolis, Indiana. During the hearing, Robert Barber testified as a vocational expert. On October 27, 2011, the ALJ issued a decision denying Artis' application for benefits. The Appeals Council upheld the ALJ's decision and denied a request for review on March 12, 2013. This action for judicial review ensued.

## II.  EVIDENCE OF RECORD

The relevant medical evidence of record follows.

Artis has a history of depression and anxiety. She has received treatment for these issues from her primary care physician, Dr. Anton Koopman, since at least 1995.

On March 29, 2007, Artis complained of anxiety. Dr. Koopman noted the severity as "moderate" and refilled her prescription for Klonopin. He also recommended counseling.

On August 7, 2007, Artis reported that she was depressed. Dr. Koopman noted that Artis was living with her boyfriend's sister and was having problems with her own teenage daughters. He further noted that Artis' depression was "moderate and acute," and he prescribed Cymbalta.

On September 27, 2007, Artis reported that the Cymbalta was not working. As a result, Dr. Koopman increased her Cymbalta dosage and her Klonopin dosage.

Approximately one year later, on September 18, 2008, Artis reported that her depression was worse. She also reported that she had stopped taking the Cymbalta. Dr. Koopman noted that the depression was "moderate" and restarted her on Cymbalta.

On November 19, 2008, Artis complained again that the Cymbalta was not working. In addition to the Cymbalta, Dr. Koopman prescribed Depakote.

On May 25, 2010, Artis underwent a psychological consultative examination with Dr. Karl W. Evans. Dr. Evans opined as follows:

> Ms. Artis suffers from depression, which limits her via anhedonia[1] and excessive sleep. She has a poor tolerance for stress and she reported frequent anger outbursts. She has a history of cutting. She has isolated herself socially. These issues are likely due to personality disturbance. Her reactions to stress and other people are erratic. Her emotional issues likely affect her concentration. Her daily activities are limited to sleep and occasional appointments.

---

[1] Anhedonia is "a psychological condition characterized by [an] inability to experience pleasure in normally pleasurable acts." *Anhedonia*, MERRIAM-WEBSTER, *available at* http://www.merriam-webster.com/dictionary/anhedonia.

Tr. at 442. Dr. Evans diagnosed Artis with major depressive disorder, borderline personality disorder, and low average intelligence.

On June 15, 2010, Artis underwent a physical consultative examination with Dr. Theodora Saddoris. Artis reported that she was not taking any medications, but that she had previously been prescribed Zoloft, Wellbutrin, Paxil, Prozac, Ambien, and Klonopin. Dr. Saddoris opined that Artis "can see, talk, walk and [has] good use of [her] arms, hands, and feet." *Id.* at 447. She does, however, have "extreme difficulty with depression, motivations, constant crying, . . . fatigue, and excessive sleeping." *Id.* She also has "[p]roblems with memory, concentration and focus, and motivation." *Id.*

On June 29, 2010, state agency consultative physician, Dr. F. Kladder, opined that Artis had affective disorders, but that her impairments were not severe. He further opined that Artis had no more than mild limitations in activities of daily living, maintaining social functioning, and maintaining concentration, persistence, or pace. Dr. Kladder also noted that a fomer employer reported that Artis "did a good job and had no problems with concentration. She was a well-liked employee who completed work assignments and had great work ethic. [She also g]ot along well with other employees and supervisors." *Id.* at 463. She did, however, have a problem with attendance due to her home life.

On September 7, 2010, Artis received treatment from Centerstone, a mental health facility. The intake clinician reported, in part, as follows:

> [Artis] and her husband have been married 2 [months], after having lived together 6 [years]…they were married after he served time in jail and he is "trying to live his life right." He was jailed for violation of probation '07 for use of THC. Her big stress is that neither [is] employed, are living in her sister's converted garage, and Richard (husband) has not been employed since they have been together…she [gets] frustrated and critical of him. Both daughters of [hers] 16 Hali and 14 Samantha are in trouble with juvenile authorities or in the detention [center] for

3

> truancy, shoplifting, drugs at school, and their father is in prison (crime sprees, meth addict, credit card theft, etc.), therefore there is no child support. There is conflict with her parents and her mother is critical of her "you'll never amount to anything," has made hateful comments to her, and dislikes her husband. Her mother has kicked them out in the past and had legal custody of the children from '02 to '06. . . .

*Id.* at 505. The clinician diagnosed Artis with acute adjustment disorder, with mixed anxiety and depressed mood, generalized anxiety disorder, and dysthymic disorder. Thereafter, Artis intermittently attended therapy sessions at Centerstone.

On December 2, 2010, Artis was evaluated by Shawn Pogue, LHMC, of Christopher & Associates Evaluation & Counseling Center, Inc., a mental health services provider. Pogue completed a Biopsychosocial Assessment and diagnosed Artis with bipolar disorder and obsessive-compulsive disorder. She also noted that Artis suffered from poor insight, borderline traits, dependent traits, and anti-social traits. During this time, Artis was experiencing a great deal of family problems and was homeless. Pogue assigned Artis a GAF score of 24 and noted that her depression and irritability were severe. She further noted that Artis had severe issues with decision making, impulsivity, and obsessions/compulsions.

On April 2, 2011, Dr. Koopman completed a Physical Medical Source Statement form. He opined that Artis had no effective physical impairments that limited her ability to work. Her mental impairments, however, severely limited her ability to work. In this regard, Dr. Koopman opined that Artis would be "off task" with regard to attention and concentration twenty-five percent of the day, she was incapable of performing even "low stress" work, and she would miss more than four days per month due to her mental impairments. He further noted that Artis has "constant anxiety, panic attacks," and was "easily angered." *Id.* at 501.

On April 20, 2011, Artis was seen by nurse Susan Kell at Centerstone "to evaluate for appropriateness of medication to help with mood issues." *Id.* at 520. Kell reported as follows:

> Jessica gives a history of poor response to multiple antidepressant medications. She is concerned with irritability and mood destabilization. Overall, she has a rather negative outlook on life in general.
>
> I have suggested to Jessica that we begin a trial of Saphris in hopes that it will stabilize her mood with the depression a bit, and not cause some of the apparent adverse reactions that she has had in the past to antidepressant medication. . . .

*Id.* at 521.

On April 26, 2011, Artis complained to Dr. Koopman that she was unable to work because of her anxiety.

In August 2011, Artis underwent another mental status examination with Dr. Dawn Doup. Based on her examination, Dr. Doup opined as follows:

1) Jessica may have difficulty being able to learn, remember, and comprehend simple instructions due to her memory difficulties.
2) Jessica may have difficulty attending, concentrating and completing simple tasks due to difficulties with concentration and depression.
3) Jessica may have difficulty interacting appropriately with co-workers and supervisors due to her poor interpersonal skills.
4) Jessica should not have difficulty handling routine changes in the workplace.

*Id.* at 528.

### III.    APPLICABLE STANDARD

Disability is defined as "the inability to engage in any substantial gainful activity by reason of a medically determinable mental or physical impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of at least twelve months." 42 U.S.C. § 423(d)(1)(A). In order to be found disabled, a claimant must demonstrate that her physical or mental limitations prevent her from doing not only her previous work, but any other kind of gainful employment that exists in the national economy, considering her age, education, and work experience. 42 U.S.C. § 423(d)(2)(A).

5

In determining whether a claimant is disabled, the Commissioner employs a five-step sequential analysis. At step one, if the claimant is engaged in substantial gainful activity, she is not disabled, despite her medical condition and other factors. 20 C.F.R. § 404.1520(b). At step two, if the claimant does not have a "severe" impairment (i.e., one that significantly limits her ability to perform basic work activities), she is not disabled. 20 C.F.R. § 404.1520(c). At step three, the Commissioner determines whether the claimant's impairment or combination of impairments meets or medically equals any impairment that appears in the Listing of Impairments, 20 C.F.R. pt. 404, subpt. P, App. 1, and whether the impairment meets the twelve-month duration requirement; if so, the claimant is deemed disabled. 20 C.F.R. § 404.1520(d). At step four, if the claimant is able to perform her past relevant work, she is not disabled. 20 C.F.R. § 404.1520(f). At step five, if the claimant can perform any other work in the national economy, she is not disabled. 20 C.F.R. § 404.1520(g).

On review, the ALJ's findings of fact are conclusive and must be upheld by the court "so long as substantial evidence supports them and no error of law occurred." *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *id.*, and the court may not reweigh the evidence or substitute its judgment for that of the ALJ. *Overman v. Astrue*, 546 F.3d 456, 462 (7th Cir. 2008). The ALJ is required to articulate only a minimal, but legitimate, justification for her acceptance or rejection of specific evidence of disability. *Scheck v. Barnhart*, 357 F.3d 697, 700 (7th Cir. 2004). In order to be affirmed, the ALJ must articulate her analysis of the evidence in her decision; while "he is not required to address every piece of evidence or testimony," he must "provide some glimpse into her reasoning . . . [and] build an accurate and logical bridge from the evidence to her conclusion." *Dixon*, 270 F.3d at 1177.

# IV. THE ALJ'S DECISION

At step one, the ALJ found that Artis had not engaged in substantial gainful activity since January 15, 2007, her alleged onset date. At step two, the ALJ concluded that Artis suffered from the following severe impairments: depression, anxiety, and obsessive-compulsive disorder. At step three, the ALJ determined that Artis' severe impairments did not meet or medically equal a listed impairment. At step four, the ALJ concluded that Artis had the residual functional capacity ("RFC") to perform

> a full range of work at all exertional levels, but . . . [that] she is subject to non-exertional limitations. Specifically, the claimant retains the ability to understand, remember, and carry out short, simple, repetitive instructions. She can sustain attention and concentration for two-hour periods at a time on short, simple, repetitive instructions, and use her judgment in making work-related decisions concerning such duties. The claimant requires an occupation with only occasional coworker contact and supervision, and no contact with the public. She should have set routine and procedures with few changes during the workday, [and she] cannot tolerate fast-paced production work or work that requires unusual work stresses.

Tr. at 17. Given this RFC, the ALJ determined at step five that Artis was capable of performing her past relevant work as a warehouse worker. Alternatively, taking into account Artis' age, education, and work experience, the ALJ determined that Artis could also perform jobs existing in significant numbers in the national economy, those being a laundry worker, an apparel sorter, and a hand packager. Accordingly, the ALJ concluded that Artis was not disabled as defined by the Act from January 15, 2007, through the date of his decision.

# V. DISCUSSION

Artis advances two objections to the ALJ's decision; both are addressed below.

## A. Weight Given to Treating Physician

Artis argues that the ALJ committed reversible error in failing to give the opinion of her treating physician, Dr. Anton Koopman, greater weight.

7

> A treating physician's opinion that is consistent with the record is generally entitled to "controlling weight." 20 C.F.R. § 404.1527(d)(2); *Schaaf v. Astrue,* 602 F.3d 869, 875 (7th Cir. 2010). An ALJ who rejects a treating physician's opinion must provide a sound explanation for the rejection. 20 C.F.R. § 404.1527(d)(2); *Campbell v. Astrue,* 627 F.3d 299, 306 (7th Cir. 2010); *Schmidt v. Astrue,* 496 F.3d 833, 842 (7th Cir. 2007).

*Jelinek v. Astrue,* 662 F.3d 805, 811 (7th Cir. 2011). "'If an ALJ does not give a treating physician's opinion controlling weight, the regulations require the ALJ to consider the length, nature, and extent of the treatment relationship, frequency of examination, the physician's specialty, the types of tests performed, and the consistency and supportability of the physician's opinion.'" *Scott v. Astrue*, 647 F.3d 734, 740 (7th Cir. 2011) (quoting *Moss v. Astrue,* 555 F.3d 556, 561 (7th Cir. 2009) (citing 20 C.F.R. § 404.1527(d)(2)).

> Regarding Dr. Koopman's assessments, the ALJ noted as follows:
>
> In April 2011, Dr. Koopman opined that the claimant has a generalized anxiety disorder with a good prognosis. His opinion supports the conclusion that the claimant does not have physical problems that prevent work activity. According to Dr. Koopman, the claimant can sit or stand for more than two hours at one time, as well as sit, stand or walk for six hours in the 8-hour workday. She can lift 50 pounds occasionally and 20 pounds frequently. Despite the absence of significant physical limitations, Dr. Koopman then reported that **the claimant would likely be off task 25% of the time, is incapable of performing even low-stress work, and is likely to miss more than four day per month due to her impairments**. The undersigned finds that Dr. Koopman's assessment as to the claimant's physical abilities is consistent with the evidentiary record as a whole, including his own objective findings upon examination, and affords this portion of his evaluation great weight. However, the undersigned affords less weight to other aspects of Dr. Koopman's opinion. . . . The [psychological portion of his] opinion is not supported by Dr. Koopman's own clinical findings, and is inconsistent with other substantial evidence of record. Specifically, it is inconsistent with the opinion of the state agency, the findings in the Centerstone records, and the opinion of the consultative examiner, Dr. Dawn Doup. The opinion is also undermined by the fact that despite her symptoms, the claimant continued to work and that she performed work ordinarily expected to exacerbate her symptoms.

Tr. at 19-20 (citations to record omitted) (emphasis added). Artis argues that, in rejecting the psychological portion of Dr. Koopman's findings, the ALJ failed "to consider the substantial

treatment relationship between Dr. Koopman and the Plaintiff," and the frequency in which she visited with Dr. Koopman. Artis' Br. at 5. The Court does not agree; the ALJ sufficiently considered the extent of the treatment relationship between Artis and Dr. Koopman, and the frequency of her visits. The ALJ's decision acknowledged that Dr. Koopman was Artis' primary care physician. The ALJ also cited to a number of Dr. Koopman's treatment records between 2007 and 2011. Although the ALJ did not specifically state the exact frequency in which Artis visited Dr. Koopman, it is clear to anyone reviewing the records (which the ALJ did) that Artis visited Dr. Koopman on a regular basis.

Artis further argues that the ALJ should have given controlling weight to Dr. Koopman's opinion because it was "not inconsistent" with other substantial evidence in the record. In fact, Artis argues that "nothing in the record is inconsistent with Dr. Koopman's opinion that Plaintiff would be off-task twenty-five percent or more of the time in a workplace environment." Artis' Br. at 6. The ALJ, however, determined that Dr. Koopman's opinion was indeed inconsistent with the record. Dr. Koopman essentially opined that Artis was unable to work. Thus, Dr. Koopman's opinion of Artis was much more limited than the other doctors—this includes the opinion of Dr. Doup.[2] Thus, the ALJ did not misapply the "not inconsistent" standard.

Lastly, Artis argues that the ALJ's weight determination in relation to Dr. Doup and Dr. Kladder was "inconsistent." Specifically, she argues as follows:

> The [state agency] opinion, which lacks the benefit of review of any psychiatric records relevant to the claim period, all of which were submitted after the opinion was issued, finds the Plaintiff's mental impairments to be non-severe. The reviewer, then, *must* give no weight to Dr. Doup's opinion, which assessed the Plaintiff with major depressive disorder, recurrent, and a GAF of 49, in addition to the findings discussed above. Yet the ALJ gives Dr. Doup's opinion "great

---

[2] Artis argues that Dr. Doup's and Dr. Koopman's opinions are similar and consistent. This is not so. Although some findings are consistent, Dr. Koopman's opinion is obviously more limited.

9

weight" and assesses the state agency opinion with "less weight." This
inconsistency cannot be reconciled in a manner to use any alleged inconsistencies
between the opinions of the state agency reviewer and those of Dr.
Koopman, where Dr. Doup's opinion, as recognized above, supports Dr. Koopman's
opinion.

Artis' Br. at 7-8 (emphasis in original). As noted above, Dr. Koopman's and Dr. Doup's opinions are not consistent. In light of this fact, the Court does not follow the logic of Artis' argument and summarily rejects it.

In sum, the Court does not agree that the ALJ committed reversible error in failing to give the opinion of Artis' treating physician controlling weight.

### B. Discussion of "Biopsychosocial Assessment"

Next, Artis argues that the ALJ violated SSR 96-8p and 20 C.F.R. §§ 404.1527(b) and 416.927(b) in failing to substantively discuss the "Biopsychosocial Assessment" completed by counselor Shawn Pogue, which was "in direct conflict with the findings of the ALJ." Artis' Br. at 10. The Court agrees that the ALJ's treatment of the Biopsychosocial Assessment was insufficient.

"While the ALJ need not articulate [her] reasons for rejecting every piece of evidence, [s]he must at least minimally discuss a claimant's evidence that contradicts the Commissioner's position." *Godbey v. Apfel*, 238 F.3d 803, 808 (7th Cir. 2000). As noted above, Pogue, a licensed mental health counselor, opined that Artis' depression and irritability were severe. She further noted that Artis had severe issues with decision making, impulsivity, and obsessions/compulsions. Pogue ultimately gave Artis a "poor" prognosis. These findings are indeed contrary to the ALJ's decision.[3] The ALJ, however, did not substantively discuss Pogue's

---

[3] The ALJ determined that Artis could "sustain attention and concentration for two-hour periods at a time on short, simple, repetitive instructions, and use her judgment in making work-

findings, nor did she explain why she rejected her findings. Accordingly, this matter must be remanded to the Commissioner. On remand, the ALJ should specifically discuss the substance of Pogue's report and explain why she rejected Pogue's assessments.

## VI. CONCLUSION

For the foregoing reasons, the decision of the Commissioner is **REVERSED** and this cause is **REMANDED** to the Commissioner for further proceedings consistent with this Entry.

SO ORDERED: 08/11/2014

_William T. Lawrence_

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Copies to all counsel of record via electronic communication.

---

related decisions concerning such duties." Tr. at 17. She further concluded that Artis "cannot tolerate fast-paced production work or work that requires unusual work stresses." *Id.*